## Barker vs. Parker.

Where the surety in a bond for the payment of money, receives the amount of the principal under an agreement to pay it over to the payees, this is a new undertaking which he is legally bound to perform, and an action will lie at the suit of the payees for the money received; and if he pay one of them his half of the money, the other may treat their interest as severed and sue in his own name for his portion.

It is more usual in such cases for the party entitled to the money to recover upon the count for money had and received, but he may declare specially, setting out the facts.

In a suit upon a bond for the payment of money, a plea that it was given upon an illegal consideration—the abduction of a person—would be a good bar to the action.

But if the principal in a bond given for an illegal consideration, deliver the money due upon it to his surety to be paid to the payee, and he agrees so to pay it over, this is a new contract and undertaking on his part, and though a party to the original contract he is as much bound to pay the money as a stranger to the illegal contract would have been.

A plea is bad as setting up a former discharge, when it alleges no final judgment in the former suit.

*Error to Bradley Circuit Court.*

Hon. John C. Murray, Circuit Judge.

Garland & Randolph, for plaintiff in error.

Beyond doubt actions for *money had and received* may be maintained against third persons who receive money to be paid over to others. *Ch. on Con.* 615; *Amos vs. Ashley,* 4 *Pick.* 71. But Parker being liable on the note with Ervin, and undertaking to discharge the agency, established his liability beyond question. Even if he had been a volunteer in receiving the money and undertaking to pay it over, his liability would have

been fixed. *Ch. on Con.* 617, to 619; 17 *Ill Rep.* 170; 9 *N. Hamp.* 55, 63; 11 *Wend.* 477.

The suit is not upon the note, that was merged by payment, and it was at the option of the parties to treat it as at an end and look to the assumpsit of Parker, which they did: There is no room for cavil about the note, or its consideration. Ervin, with a full knowledge of all the facts, paid over the money; he certainly cannot question it, could not recover the money back, be the consideration of the note ever so fraudulent or illegal. *Ch. on Con.* 622, 633; 3. *Watts,* 327; 10 *Peters,* 137. The illegal contract is performed, and now it is too late to recur to the consideration. If Ervin cannot question it, certainly his agent cannot.

The subject mater of this suit is entirely different from the one set out in the 3d plea. The plea also fails to show the termination of that suit, and makes no attempt to show that plaintiff received his half of the money. *Ch. Pl.* 488 *and notes,* 828, 829.


HEMPSTEAD, for the defendant.

The declaration is insufficient and the action misconceived. Barker should have sued in debt on the obligation; and he had no right to abandon that higher security, and resort to a mere verbal promise. The payment by Ervin to Parker did not discharge the obligation. It was only a private arrangement between the co-obligors with which the payees had no concern or privity.

The second plea was good. It set up an illegal consideration, for which the note was executed. The illegality of a contract is always a perfect defence to its enforcement. 2 *Parsons,* 186.

No valid consideration could possibly spring out of such a transaction as that for which the note was given. Because the effect of it would be to encourage the violation of law. *Ch. on Con.* 674; 9 *Verm.* 310; 6 *N. Hamp.* 225, and the consideration

being illegal, it constituted a good defence to and barred the action.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

Assumpsit by George M. Barker against Uriah H. Parker.

The first count in the declaration alleged, in substance, that on the 26th of March, 1857, one James Ervin, Benj'n. W. Martin and defendant executed a writing obligatory, by which they promised, thirty days after its date, to pay to John R. Barnett and the plaintiff, $406 60 for value received, with ten per cent. interest from maturity. That on the 27th of April, 1857, Ervin, who was principal in the bond, and for whom Martin and defendant were sureties, paid over to the defendant the full sum stipulated to be paid thereby, with the express agreement and understanding that defendant should pay the same over to the plaintiff and said Barnett, which the defendant promised at the time to do: and afterwards, on the 12th of December, 1857, the defendant fully paid over to Barnett his one-half of said obligation, viz: $203 30, which he then received in full payment and discharge of his portion of said indebtedness; but the defendant failed and neglected to pay the plaintiff his portion thereof, but kept back and withheld the same, etc.

The second count was for money received of Ervin, by the defendant, to be paid over to plaintiff. The third was the common counts blended.

The court sustained a demurrer to the first count.

To the 2d and third counts, the defendant pleaded non-assumpsit.

To the second count, a special plea in substance as follows:

That the money supposed to have been received of Ervin, by defendant, to be paid over to the plaintiff, was to be so paid over in discharge of a certain writing obligatory then held by the plaintiff and one John R. Barnett, against said Ervin, one Benj. W. Martin and defendant, as follows, etc., [here the obligation is set out, being same referred to in the first count of the declaration], which writing obligatory was executed by Ervin,

Martin and defendant, in consideration that plaintiff and said Barnett arrested and took into their custody one Jackson Cloud, in the county of Bradley, a free white person, and with force and violence, and without any legal authority, conveyed said Cloud from said county to the city of New Orleans, beyond the State of Arkansas and there delivered said Cloud to said Ervin, against the will and without the consent of said Cloud; and said obligation was executed upon no other consideration, etc., and therefore defendant avers that said writing obligatory was executed upon an illegal consideration, and was null and void.

Defendant also filed a third plea (to the second count) alleging, in substance, that the money received by him of Ervin for the use of plaintiff, etc., was to be paid over on the obligation above described: that suit had been brought on the obligation by plaintiff and Barnett, in the Bradley Circuit Court, against defendant and Martin: that they interposed a plea that the obligation was executed upon an illegal consideration (the abduction of Cloud,) to which plaintiff, in said suit demurred, and the demurrer was overruled by the court, etc.

The defendant also interposed a fourth plea (to the third count) alleging that the money therein alleged to have been had and received by him for the use of plaintiff was received in manner and form as set forth in his second plea, and not otherwise.

The plaintiff demurred to the 2d, 3d and 4th pleas, the court overruled the demurrer, he rested, and final judgment was given for defendant.

1. Treating the bond recited in the first count of the declaration as a valid obligation, the $203 30 paid over to Barnett by the defendant was a payment pro tanto of the bond, and the plaintiff and Barnett had the right of action upon the bond against Ervin, Martin and the defendant, for the balance due thereon. But the plaintiff was not obliged, as insisted by the counsel for defendant, to resort to an action on the bond: this was not his only remedy. The defendant received of Ervin $406 60, in money, which, it is alleged in the count in ques-

tion, he agreed to pay over to plaintiff and Barnett. This, on the part of the defendant, was a new undertaking which he was legally bound to perform. In fulfillment of his agreement he paid over to Barnett one half of the money, but retained in his own hands the other half. The money which he so retained belonged justly and equitably to the plaintiff. Had he a legal right of action to recover it?

It may be regarded as the settled law in this country that where one person places money in the hands of another, to be paid over to a third person, and the person receiving the money agrees so to pay it over, the third person for whose benefit he receives the money, may maintain an action against him therefor. *Del. & H. Canal Co., vs. Westchester co., Bank*, 4 *Denio*, 98; 2 *Greenl. Ev. sec.* 119; *Hall vs. Martin*, 17 *Mass. R.* 578; 1 *Story on Contracts*, (4 *ed.*) *sec.* 451, *b. p* 554, *and* cases collected in *note* 3.

The money having been received by the defendant of Ervin for the joint benefit of plaintiff and Barnett, had he failed to pay over any part of it, they would have had a joint right of action against him for the whole of the money. But the defendant having paid over to Barnett one half of the money, which it seems was the amount going to him, and he having accepted it, as it is alleged in the count, in full satisfaction and discharge of his portion, the plaintiff had the right, we think, to acquiesce in the payment to Barnett, to treat their interest as severed, and to sue for the other half of the money in his own name, to which, as above remarked, he was equitable entitled.

It is more usual for the party entitled to the money in such cases to recover upon the count *for money had and received*, which in its spirit and objects has been likened to a bill in equity, and may, in general, be maintained where the defendant had received or obtained possession of money belonging to the plaintiff, and which, in equity and good conscience, he should pay over to him (2 *Greenlf. Ev., sec.* 117); but we think the facts requisite to show a cause of action are substantially

alleged in the special count in question, and that the court should not have sustained the demurrer thereto.

2. If the suit had been upon the bond, no doubt but the defence set up in the 2d plea of defendant, that the bond was executed upon an illegal consideration—for services rendered in the abduction of Cloud—would have been a good bar to the action. But the suit was not upon the bond, or the illegal contract. Ervin, the principal in the bond, not choosing to avail himself of the illegality of the transaction to avoid payment, delivered the money due upon the bond to the defendant, to be paid over by him to the plaintiff, etc., and he agreed so to pay it over. This was a contract and undertaking on his part, and though he was a surety of Ervin in the bond, and a party to the original contract, he was as much bound to pay the money over to the plaintiff as a stranger to the illegal contract would have been If Ervin was willing to pay the money due on the bond, and delivered it to defendant for that purpose, what right had he to put the money in his own pocket, and to say that Ervin was not legally bound to pay the bond, and therefore he would keep the money? None we think.

In *Farmer vs. Russell et al.*, 1 *Bos. & Pull.* 205, quoted by Chief Justice MARSHALL in *Armstrong vs. Toler*, 11 *Wheat.* 273, it was held, that "if A is indebted to B on a contract forbidden by law, and pays the money to C for the use of B, a court will give judgment in favor of B against C for this money. In this case B could not have recovered against A, but when the money came into the hands of C, a new promise was raised on a new consideration, which was not infected by the vice of the original contract. In this case, Chief Justice EYRE said, that the plaintiff's demand arose simply from the circumstance that money was put into the hands of C for his use; and Justice BULLER said, that the action did not arise upon the ground of the illegal contract. Yet, in this case, A's original title to the money was founded on an unlawful contract, and he could not have maintained an action against B." See also *Perkins vs. Clemm*, 22 *Ark.*

396          CASES IN THE SUPREME COURT

The demurrer should have been sustained to the 2d plea, and also to the 4th, which attempted, in an informal way, to set up the same matter.

The 3d plea, if unobjectionable in other respects, was bad as a plea of former discharge, because it alleges no final judgment in the suit.

The judgment of the court below must be reversed, and the cause remanded, with instructions to overrule the defendant's demurrer to the first count in the declaration, and sustain the plaintiff's demurrer to the 2d, 3d and 4th pleas, and for further proceedings, etc.